IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL MOTA | : | CIVIL ACTION |
| | : | NO. 11-4298 |
| v. | : | |
| | : | |
| AARON'S SALES AND LEASE | : | |
| OWNERSHIP | : | |

O'NEILL, J.                                                                                                                                                                           September 4, 2012

**MEMORANDUM**

Now before me are a motion for summary judgment filed by defendant Aaron's Inc.,[1] plaintiff Manuel Mota's response and defendant's reply. For the reasons that follow, I will grant defendant's motion.

**BACKGROUND**

Plaintiff claims that defendant, his former employer, discriminated against him. Defendant terminated plaintiff's employment on January 30, 2010 after plaintiff lost his Pennsylvania Department of Transportation Medical Certification. Dkt. No. 17-2, Def.'s Statement of Undisputed Facts at ¶ 40. Plaintiff contends that instead of firing him defendant should have reassigned him to a Customer Service Representative position – the only position in an Aaron's store that did not require an employee to drive. Id. ¶ 34.

Defendant's stores "sell and deliver furniture, electronics and appliances to customers." Id. ¶ 5. Defendant hired plaintiff on August 18, 2009 as a Manager Trainee. Id. ¶ 9. Manager Trainees "assist the Customer Accounts Department in lease agreement renewal – i.e., collecting payments." Id. ¶ 13. The job description for the Manager Trainee position states that Manager

---

[1] Defendant contends that while it does business as Aaron's Sales and Lease Ownership, it is properly identified as Aaron's, Inc. and is improperly identified in the complaint. Dkt. 17-1 at 1.

Trainees are required to "[s]afely operate[ ] company vehicle[s]" and possess good "driving skills." Id. ¶ 12.  Further, the job description requires that, pre-employment, candidates for the Manager Trainee position have a "[s]atisfactory . . . D.O.T. Physical."  Dkt. No. 17-3 at 38.  At his deposition, plaintiff explained that Manager Trainees call customers and drive the company truck to collect payments and deliver or pick up furniture from customers.  Dkt. No. 17-2 at ¶ 16. The General Manager of the store where plaintiff worked explained that "including the time Mr. Mota spent behind the wheel of an Aaron's delivery truck and visiting customers at their homes, on average Mr. Mota spent a total of approximately 3-4 hours a day out in the field."  Dkt. No. 17-4 at ¶ 10.  Plaintiff counters that he spent "only 2.7% of his working hours at Aaron's" driving a company truck."  Dkt. No. 18 at 1.

On October 20, 2009 plaintiff completed a "Medical Examination Report for Commercial Driver Fitness Determination" and applied for PennDOT medical certification.[2]  Dkt. No. 17-2 at ¶¶ 17-18, 23.  Plaintiff initially obtained medical certification from PennDOT.  Id. ¶ 17. Approximately one month later, PennDOT "contacted Plaintiff and informed him that his medical certification had been issued in error and that it would be revoked."[3]  Id. ¶ 24.  Without medical certification, plaintiff could no longer legally operate one of defendant's commercial delivery trucks.  Id. ¶ 40.

Plaintiff contends that PennDOT revoked his medical certification because he has monocular vision.  Id. ¶ 24.  He has been "blind from birth in one eye."  Dkt. No. 17-3 at 16:5-7.

---

[2] The facts presently before the Court do not explain why plaintiff applied for his PennDOT Medical Certification after and not before he was hired.

[3] Plaintiff does not contend that PennDOT's determination to revoke his medical certification was erroneous or that he ever appealed PennDOT's determination.

On the form he submitted to PennDOT when applying for medical certification, plaintiff noted that he had a history of "eye disorders or impaired vision" and further explained "[n]o vision on [sic] the Right Eye also Lazy Eye." Dkt. No. 17-2 at ¶¶ 20-21. Importantly, he certified that his impaired vision "does not affect any activity on [sic] my normal life. Corrective Glasses." Id. ¶ 21. He certified that the information on the form was "complete and true." Id. ¶ 22.

After PennDOT revoked plaintiff's medical certification, defendant contends that plaintiff did not ask defendant for any kind of accommodation. Dkt. No. 17-2 at ¶ 42. His manager tried to have him moved into a non-driving Customer Service Representative position. Id. ¶ 33. Plaintiff contends that he believed that his supervisor "was trying to accommodate him to remain as an employee at Aaron's so [plaintiff] did not believe that he needed to go any farther up the supervisor ladder." Dkt. No. 18 at 2. According to Aaron's staffing guidelines, the store where plaintiff worked required only two Customer Service Representatives. Dkt. No. 17-2 at ¶ 37. The store where plaintiff worked, however, employed three Customer Service Representatives at the time in question. Id. ¶ 39. Ultimately, defendant terminated plaintiff because he could not legally drive a delivery truck and because no additional Customer Service Representatives were needed. Id. ¶¶ 39-40.

## STANDARD OF REVIEW

The party moving for summary judgment has the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to

a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.[4]

---

[4] In its reply, defendant argues that the Court should strike plaintiff's response to its motion for summary judgment as untimely. Defendant contends that plaintiff had 17 days to file its response. Dkt. No. 19 at 1-2. I disagree. Rule 7.1(c) of the Local Rules of Civil Procedure provides that

> any party opposing [a] motion shall serve a brief in opposition, together with such answer or other response which may be

**DISCUSSION**

To survive defendant's motion for summary judgment, plaintiff must present facts which, if taken as true, could establish a failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. Under the ADA an employer engages in unlawful discrimination by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Id. § 12112(b)(5)(A). Defendant argues, inter alia, that plaintiff's claims cannot withstand the instant motion for summary judgment because plaintiff has not established that a reasonable jury could conclude that he was a "qualified individual with a disability" such that defendant was required to provide him with a

---

> appropriate, within fourteen (14) days after service of the motion and supporting brief, except that in the case of a motion under Fed. R. Civ. P. 12(b) or 56, the opposing party shall respond within twenty-one (21) days.

L.R. Civ. P. 7.1(c) (emphasis added). Rule 6(d) of the Federal Rules of Civil Procedure adds three additional days to plaintiff's response time Fed. R. Civ. P. 6(d). Plaintiff thus had 24 days to respond to the motion for summary judgment, not 17, and should have filed his response by July 12, 2012. Instead, plaintiff filed his response on July 18, 2012, apparently operating under the mistaken belief that he had 30 days to respond.

Rule 56(e) provides that"[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact . . . ." Fed. R. Civ. P. 56(e). Given that the Court may not grant a motion for summary judgment without examining its merits, I will deny defendant's request to strike plaintiff's response even though it is untimely. See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 174 (3d Cir. 1990) (holding that a motion for summary judgment may not be granted simply because it is unopposed), Player v. Motiva Enters., 02-3216, 2006 WL 166452, at *3 (D.N.J. Jan. 20, 2006) (considering untimely filing because court should not grant a motion for summary judgment without examining the merits).

reasonable accommodation under the ADA. I agree.

The ADA provides that an individual has a disability if he has "(A) a physical or mental impairment that substantially limits one or more [of his] major life activities . . . ; (B) a record of such an impairment[5]; or (C) [is] regarded as having such an impairment[6] . . . ." 42 U.S.C. § 12102(1). Plaintiff has not set forth sufficient evidence to show that his monocular vision[7] substantially limits a major life activity or that he has a record of a such an impairment.

"[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The Supreme Court has held, however, that it " cannot say that monocularity" per se causes "a substantial limitation of a major life activity." Albertson's Inc. v. Kirkingburg,

---

[5] "The 'record of' definition was tailor-made for plaintiffs who . . . claim they once suffered from a physical or mental impairment that substantially limited a major life activity, recovered from the impairment, but nonetheless faced employment discrimination because of it." Adams v. Rice, 531 F.3d 936, 945-46 (D.C. Cir. 2008). Plaintiff does not contend that his claim is based on a record of an impairment.

[6] In his response to defendant's motion for summary judgment, plaintiff contends that his claim should survive because he is regarded as disabled. Dkt. No. 18 at 2. To proceed on a failure to accommodate claim, however, plaintiff must satisfy either of the first two subparts of 42 U.S.C. § 12102(1), as 42 U.S.C. § 12201(h) provides that covered entities such as defendant "need not provide a reasonable accommodation to an individual who meets the definition of disability in [42 U.S.C. § 12102(1)] solely under paragraph (C) of such section." See Pearce-Mato v. Shinseki, No. 10-1029, 2012 WL 2116533, at *6 (W.D. Pa. June 11, 2012), citing 42 U.S.C. § 12201(h) ("[A]s part of the amendments to the ADA, claims based on a failure to accommodate can only be brought as part of an actual disability claim. The ADAAA specifically provides that an employer is not required to accommodate employees who are merely regarded as disabled.").

[7] Monocular vision is a physical impairment within the meaning of the ADA. See 29 CFR § 1630.2(h)(1) (1998) (defining "physical impairment" as "[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: . . . special sense organs").

527 U.S. 555, 566-67 (1999).  The ADA "requires monocular individuals, like others claiming the Act's protection, to prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial."  Id. at 566; see also Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 383 (3d Cir. 2004) (holding that a plaintiff seeking to prove that a physical impairment substantially limits a major life activity must "identify the life activity that [he] claims is limited by the impairment; and prove the limitation is substantial").

Plaintiff correctly states that Albertson's and Fiscus stand for the proposition that "every case needs to be taken separately."  Dkt. No. 18 at 2.  In order to raise a material issue of fact, however, plaintiff must raise "more than a mere scintilla of evidence in [his] favor."  Williams, 891 F.2d at 460.  Plaintiff has not set forth any testimony, documentation or other evidence to establish that his monocular vision substantially limits his ability to see, work or engage in any other major life activity when compared to most people in the general population.  See 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. . . . [N]ot every impairment will constitute a disability within the meaning of this section.").

With respect to his ability to see, plaintiff has admitted that his monocular vision "does not affect any activity on [sic] [his] normal life."  Dkt. No. 17-2 at ¶ 21.  "Viewing the evidence in the light most favorable to [plaintiff], he fails to provide evidence from which a reasonable jury could find more than a mere difference in his vision compared to others."  Knutson v. Schwan's Home Service, Inc., — F. Supp. 2d ----, No. 10-4823, 2012 WL 1466681, at *4 (D.

Minn. Apr. 27, 2012) (finding monocular plaintiff who lost his DOT medical certification after an eye injury had not shown that he was disabled for purposes of the ADA where the plaintiff continued to drive and he provided no "evidence that he had a loss of depth perception or visual acuity"); see also Equal Emp't Opportunity Comm'n v. United Parcel Serv. Inc., 306 F.3d 794, 803 (2d Cir. 2002) ("[F]or a monocular individual to show that his impairment is a disability, the impairment must prevent or severely restrict use of his eyesight compared with how unimpaired individuals normally use their eyesight in daily life . . . . Thus, some visual impairment does not necessarily mean that the individual is substantially limited in seeing overall; put differently, it does not follow that seeing as a whole is substantially limited just because the individual has a deficiency in some aspect of vision.") (emphasis omitted); cf. Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010) (holding that a reasonable jury could find that plaintiff with monocular blindness was substantially limited in her ability to see because she had proffered evidence that she could not drive at night).

With respect to his ability to work, the only documented impact of plaintiff's monocular vision is his inability to perform jobs requiring PennDOT Medical Certification, i.e., jobs requiring that he drive commercial vehicles. "To be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999). For example, the Court of Appeals found that a plaintiff failed to create a genuine issue of fact as to whether he suffered from a disability within the meaning of the ADA where he "ha[d] not alleged any limitation in the "major life activity" of working caused by his back injuries beyond his inability to drive a bus." Tice, 247 F.3d at 512. Similarly, in Knox v. City of Monroe, No.

07-606, 2008 WL 5157913, at *5 (W.D. La. Dec. 9, 2008), the Court found that the plaintiff had not shown that she was substantially limited in the activity of working where she claimed that her vision impairment prevented "her from performing the job of driver during bright daylight hours" but she did not "show that she [was] precluded from working as a driver during other hours or that she [was] precluded from performing other jobs, including that of a clerk."  Here, as in Tice and Knox, plaintiff has not set forth any evidence that his vision precludes him from performing a broad range of jobs.

      Plaintiff has not raised a genuine issue of material fact as to whether his monocular vision renders him substantially limited in any major life activity, including the activities of seeing or working.  Indeed, the only evidence before the Court with respect to the impact of plaintiff's vision on his life activities beyond his ability to drive commercial vehicles is his own statement on his application for PennDOT medical certification that his impaired vision "does not affect any activity on [sic] my normal life."  Dkt. No. 17-2 at ¶ 21.  I find, therefore, that plaintiff is not "disabled" within the meaning of the ADA and will grant defendant's motion for summary judgment.

      An appropriate Order follows.